UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ERIC A. SABINO,

                              Plaintiff,                          **MEMORANDUM AND ORDER**
                                                                  18-CV-647 (RRM)

         -against-


KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,[1]

                              Defendant.
--------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

         The Law Offices of Charles E. Binder and Harry J. Binder, LLP ("Binder"), which

successfully represented plaintiff Eric A. Sabino in his Social Security appeal before this Court,

now move pursuant to 42 U.S.C. § 406(b) for an order awarding attorney's fees in the amount of

$36,146.75.  For the reasons set forth below, that motion is granted but Binder is ordered to pay

plaintiff the $6,759.02 it already received in fees pursuant to the Equal Access to Justice Act.

                                          **BACKGROUND**

         On June 22, 2012, plaintiff retained Binder to represent him before the Social Security

Administration ("SSA") in connection with his claim for disability insurance benefits.  (T 173.)[2]

In July 2012, plaintiff filed claims for Social Security Disability Insurance benefits and

Supplemental Security Income, alleging that he had been disabled since January 1, 2010.  (T

326, 328.)  His claims were initially denied and he requested a hearing before an Administrative

---

[1] The complaint in this action named Nancy A. Berryhill, who was then Acting Commissioner of Social Security, as
defendant.  Federal Rule of Civil Procedure 25(d)(1) provides that "when a public officer who is a party in an
official capacity dies, resigns, or otherwise ceases to hold office while the action is pending[, … the] officer's
successor is automatically substituted as a party."  Since Kilolo Kijakazi is now Acting Commissioner, the Court has
substituted her as defendant.

[2] Numbers proceeded by "T" denote pages in the Administrative Transcript (Doc. No. 20).

Law Judge ("ALJ").  (T 188–95.)  That hearing was held before ALJ Wallace Tannenbaum who, in a decision dated April 8, 2014, found that plaintiff was not disabled.  (T 148–67.)

Plaintiff then requested that the Appeals Council review the ALJ's decision.  In an order dated July 1, 2015, the Appeals Council granted that request, vacated the ALJ's decision, and remanded the case for further proceedings.  (T 168–71.)  After conducting two more hearings, ALJ Tannenbaum denied plaintiff's claims for a second time in a decision dated July 20, 2016. (T. 26–38.)  On December 1, 2017, the Appeals Counsel denied plaintiff's request for review of that decision, (T 1–4), rendering it the final decision of the Commissioner.

On January 16, 2018, plaintiff signed an agreement with Binder (the "Retainer Agreement"), in which the law firm agreed to appeal the Commissioner's final decision to this Court and to continue to represent plaintiff before the SSA if the case was remanded.  (Retainer Agreement (Doc. No. 31-3).)  It was a contingent-fee agreement, specifically providing that Binder would receive no fee if this Court denied benefits.  (*Id.* at ¶ 2.)   In contrast, if plaintiff was awarded past-due benefits by this Court, Binder was "to receive twenty-five percent (25%) of the past due benefits … pursuant to 42 U.S.C. §406," subject to approval of the Court.  (*Id.* at ¶ 1.)  However, the agreement provided: "If the claimant is awarded past due benefits by the Appeals Council or an Administrative Law Judge, the law firm may apply for fees under [42 U.S.C.] §406(a) and/or §406(b)."  (*Id.* at ¶ 3.)  The Retainer Agreement provided that these fees would "not exceed 25% of the back due benefits," (*id.*), and obligated plaintiff to assign any fees he received under the Equal Access to Justice Act ("EAJA") to Binder, (*id.* at ¶ 4).

On January 30, 2018, Binder commenced this action on behalf of plaintiff.  (Complaint (Doc. No. 1).)  The next day, the Court entered an order which, among other things, directed defendant to serve a copy of the administrative record on plaintiff within 90 days of service of

the complaint and directed plaintiff to serve a motion for judgment on the pleadings on defendant

within 60 days thereafter.  (1/31/2018 Order (Doc. No. 5) at 1.)  In compliance with this order,

defendant served the administrative transcript on May 1, 2018, and plaintiff served his Rule

12(c) motion, including a 23-page memorandum of law, on June 29, 2018.  Defendant then

served a cross-motion for judgment on the pleadings, to which plaintiff filed a reply.

After the motions were fully brief and filed, the Court ordered the parties to confer and

submit a stipulation of facts setting forth all facts from the administrative record relevant to the

arguments raised in the pending motions.  (4/18/2019 Order (Doc. No. 22).)  That stipulation,

containing 15 pages of facts culled from the 714-page administrative transcript, was filed on

June 20, 2019.  (Joint Stipulation of Facts (Doc. No. 25).)

In a memorandum and order dated August 20, 2019, the Court denied defendant's cross-

motion and granted plaintiff's motion to the extent it requested that the case be remanded for

further administrative proceedings.  (Memorandum and Order (Doc. No. 27) at 20.) After

judgment was entered, (Doc. No. 28), the parties filed a stipulation and order which proposed

awarded plaintiff $6,759.02 for attorney's fees and $400.00 in court costs pursuant to the EAJA,

(Doc. No. 29-1).  That proposed order was signed on November 8, 2019, (Doc. No. 30), and

those amounts were paid to Binder pursuant to the terms of the Retainer Agreement.

Administrative Proceedings on Remand

According to an affirmation executed by Charles E. Binder (the "Binder Affirmation"),

the Appeals Council remanded plaintiff's claim to an ALJ.  (Binder Aff. (Doc. No. 31-2) at ¶7.)

On February 25, 2020, ALJ Margaret Pecorano held yet another hearing – the fourth hearing at

which Binder had appeared on plaintiff's behalf.  (*Id.*)  On April 7, 2020, ALJ Pecorano issued

her decision, finding that plaintiff had been disabled since January 1, 2010.  (*Id.*)

On October 1, 2020, the SSA mailed plaintiff a Notice of Award ("the NOA"), which notified plaintiff that he would receive past-due benefits.  The NOA explained that these benefit would be paid for the period from July 2011 – one year prior to the filing of plaintiff's claims – through September 2020, and listed the monthly amounts plaintiff would receive for that period. (NOA (Doc. No. 31-3) at 1–2.)  The NOA did not calculate the exact amount of past-due benefits but implied that they totaled $144,587 by stating that the SSA usually withholds 25% of past-due benefits to pay representative's fees and was withholding $36,146.75 in this case.  (*Id.* at 4.)  The NOA also implied that plaintiff would continue to receive Social Security benefits until at least 2025 by stating that his disability status would be reviewed in five to seven years.  (*Id.* at 5.)

The Instant Motion

On October 15, 2020 – 14 days after the NOA was mailed – Binder filed the instant motion, seeking $36,146.75 in attorney's fees pursuant to 42 U.S.C. §406(b).  In support of that motion, Binder submitted a nine-page memorandum of law ("Binder's Memo"), the Binder Affirmation, and three exhibits:  the Retainer Agreement; the NOA; and time records.  The time records indicate that three Binder attorneys spent a total of 33.1 hours representing plaintiff before this Court.  (Time Records (Doc. No. 31-3).)  Patrick H. Busse spent 28.2 hours drafting plaintiff's motion for judgment on the pleadings and the reply to plaintiff's cross-motion. Charles E. Binder spent 3.4 hours on the case, including 1.9 hours reviewing Busse's draft, and Daniel S. Jones spent 1.8 hours, half of which was spent working on the joint stipulation of facts.

The Binder Affirmation details the three attorney's extensive experience representing claimants in Social Security cases.  Mr. Busse has been licensed in New York for over 20 years, has represented thousands of claimants before the SSA, and has worked on numerous federal court appeals.  (Binder Aff. at ¶ 10.)  Mr. Jones has worked exclusively on social security

4

appeals in federal courts for the past decade, handling over a thousand cases during that period. (*Id.* at ¶ 11.)  Mr. Binder, who has served as a president of the New York Social Security Bar Association and an officer of the National Organization of Social Security Claimant's Representatives ("NOSSCR"), has handled thousands of administrative hearings and federal appeals.  (*Id.* at ¶ 14.)

In the response to the instant motion (the "Response"), Defendant notes that the $36,146.75 sought by Binder amounts to $1,092.05 for each of the 33.1 hours spent by counsel. (Response (Doc. No. 32) at 2.)  Defendant implies that this fee is unreasonable, citing to several Social Security cases from this district in which fees approaching $1,000 per hour have been reduced.  (*Id.*)  However, the Response also cites to cases in which fees exceeding $1,000 were approved, (*id.*), and does not take a position as to what level of reduction would be appropriate.

## STANDARD OF REVIEW

The Social Security Act "allows courts to grant reasonable attorney's fees for successful representation in Social Security actions."  *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022). Specifically, the Act provides:

> Whenever a court renders a judgment favorable to a claimant …
> who was represented before the court by an attorney, the court may
> determine and allow as part of its judgment a reasonable fee for
> such representation, not in excess of 25 percent of the total of the
> past-due benefits to which the claimant is entitled by reason of
> such judgment ….

42 U.S.C. § 406(b)(1)(A).

"Section 406(b) does not prohibit contingent fee agreements."  *Wells v. Sullivan*, 907 F.2d 367, 369 (2d Cir. 1990).  Indeed, the Supreme Court has noted that "the marketplace for Social Security representation operates largely on a contingency fee basis," *Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002), and that attorneys and clients "characteristically" enter into

contingent-fee agreements "specifying that the fee will be 25 percent of any past-due benefits to which the claimant becomes entitled," *id.* at 803.  However, while § 406(b) allows contingency agreements, it "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'"  *Fields*, 24 F.4th at 852 (quoting *Wells*, 907 F.2d at 369).

The Second Circuit and the Supreme Court have filled that void by "set[ting] out guidelines for courts conducting this reasonableness analysis."  *Id.* at 849.  Under these guidelines, courts "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness."  *Gisbrecht*, 535 U.S. at 808; *see Wells*, 907 F.2d at 371.  The Second Circuit has "rejected reliance on 'the traditional lodestar method'" in determining whether an amount is reasonable.  *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 371.  "[B]ecause a successful social security claimant evaluates and pays his own attorney, … the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations."  *Wells*, 907 F.2d at 371.  However, a court "ought not blindly approve every fee request made pursuant to a contingent agreement."  *Id.* at 372.

Both the Second Circuit and Supreme Court have listed several factors that a court should consider in evaluating the reasonableness of the contingency agreement.  The Second Circuit has "instructed courts to 'determine whether the contingency percentage is within the 25% cap' and then to consider 'whether there has been fraud or overreaching in making the agreement, and' … 'whether the requested amount is so large as to be a windfall to the attorney.'"  *Fields*, 24 F.4th at 853 (quoting *Wells*, 907 F.2d at 372).  In *Gisbrecht*, the Supreme Court provided examples of factors a court might consider in conducting this reasonableness analysis:

> First, the [Supreme] Court pointed to the character of the
> representation and the results the representative achieved, noting

6

that courts may reduce the requested fees where the representation
is substandard.  Second, the Court indicated that a reduction is
appropriate where the attorney is responsible for delay, lest the
attorney profit from the accumulation of benefits during a delay
that the attorney caused.  And third, a reduction may be in order if
the benefits are large in comparison to the amount of time counsel
spent on the case—the so-called 'windfall' factor ….

*Fields*, 24 F.4th at 853 (internal quotations and citations omitted).

## DISCUSSION

In this case, most of the factors do not require lengthy discussion.  First, the Retainer

Agreement permits Binder to "apply for fees under 42 U.S.C. §406(a) and/or §406(b)" in the

event that post-remand proceedings result in an award of past-due benefits by the Appeals

Council and/or an Administrative Law Judge, (Retainer Agreement at ¶ 3), but specifically

provides that the "combined fees" will not "exceed 25% of any retroactive benefits awarded,"

(*id.* at ¶ 8.)  Thus, the contingency percentage is within the 25% cap.  Second, there is no

evidence of fraud or overreaching in the making of the Retainer Agreement.  Indeed, the

Response expressly states that "[t]he Commissioner finds no evidence of fraud or overreaching."

(Response at 2.)

Third, Binder's representation was not substandard and ultimately achieved results on

behalf of plaintiff.  Binder not only succeeded in convincing this Court to remand plaintiff's case

for further proceedings but ultimately won at the agency level, convincing ALJ Pecorano that

plaintiff had been disabled since the start of 2010.  As a result of Binder's efforts, plaintiff was

awarded over $144,500 in past-due benefits and will continue to receive Social Security benefits

until at least 2025.

Fourth, Binder obtained these results without inordinate delay.  Binder commenced this

action two weeks after plaintiff signed the Retainer Agreement.  The law firm filed plaintiff's

Rule 12(c) motion less than two months after being served with the administrative transcript, and without requesting an extension of the Court's scheduling order.  Although Binder twice consented to extensions of the time to file the joint stipulation of facts, those extensions were requested by defendant's counsel and totaled only 34 days.  Thus, although this case was pending for over a year and one-half before judgment was entered, virtually none of the delay was attributable to Binder.

<u>The "Windfall" Factor</u>

The so-called "windfall factor" requires a lengthier discussion.  "In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate." *Fields*, 24 F.4th at 854.  The Second Circuit has identified four "factors to be considered" in making this determination.  First, courts should consider "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do." *Id.*  Second, "courts should consider the nature and length of the professional relationship with the claimant – including any representation at the agency level." *Id.* at 855.  Although § 406(b) fees compensate counsel only for court-related work, "consideration of 'the time spent and work performed by counsel on the case when it was pending at the agency level' can inform a district court's understanding of 'the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court.'" *Id.* (quoting *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005)).

"A third factor to consider is the satisfaction of the disabled claimant." *Id.*  "Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award

8

of benefits and the effort it took to achieve that result." *Id.* Since contingency-fee arrangements make "payment for an attorney in a social security case … uncertain, … any reasonable fee award must take account of that risk." *Id.* at 855–56 (quoting *Wells*, 907 F.2d at 371).

After reviewing these factors, the Court is satisfied that the $36,146.75 requested by Binder would not constitute a windfall. First, Binder's lawyers were very experienced. All three had specialized in Social Security cases for years and had represented over a thousand claimants. As other courts have recognized, this extensive experience has made the law firm particularly efficient. As the Second Circuit acknowledged in a recent case, "Binder's ability and expertise allowed it to accomplish in just 25.8 hours what other lawyers might reasonably have taken twice as much time to do." *Fields*, 24 F.4th at 854. Here, it took Binder slightly longer to achieve favorable results before this Court – a total of 33.1 hours – but that was still a shorter time than other, less experienced firms might have reasonably taken to achieve the same results. *See id.*

Second, the Court notes that Binder had a very long and ultimately successful professional relationship with plaintiff, most of which occurred at the agency level before and after the Court remanded this matter. Binder began representing plaintiff in mid-2012, and was still representing plaintiff when ALJ Pecorano issued her fully favorable decision in April 2020. During the nearly eight years that it represented plaintiff, Binder convinced the Appeals Council to reverse ALJ Tannenbaum initial unfavorable decision and successfully appealed the ALJ second adverse decision. After a hearing before ALJ Pecorano – the fourth such hearing in which Binder appeared for plaintiff – Binder convinced her to issue a fully favorable decision.

This lengthy litigation history suggests that the case was indeed complex, required considerable effort and skill to obtain a favorable result, and involved a substantial risk that Binder might fail and a receive no compensation at all for their efforts. It was not a case in

which the lawyer engaged on a contingency-fee basis succeeds immediately and with minimal

effort – the sort of case in which there was "very little risk of nonrecovery."  *See Fields*, 24 F.4th

at 856.

      With respect to the third factor, Binder's Memo does not divulge whether plaintiff was

satisfied with the law firm's efforts.  However, the Court notes that ALJ Pecorano found that

plaintiff had been disabled since the start of 2010, just as plaintiff had claimed.  This is a result

that should satisfy most reasonable clients.  Furthermore, the record contains no indication that

plaintiff, who has a direct financial stake in the fee determination, objects to the fee award.

      With respect to the fourth factor, the Court notes that success in this case was far from

certain.  Before commencing this action in January 2018, Binder had already been litigating

plaintiff's claim for over five and one-half years at the administrative level, where plaintiff's

claims had been twice rejected by ALJ Tannenbaum.  That ALJ's final decision was not clearly

flawed as evidenced by the fact that the Commissioner did not stipulate to remand but filed a

substantial cross-motion, including a 30-page memorandum of law.  Although Binder ultimately

convinced this Court to remand the matter, Binder then had to appear at a hearing before ALJ

Pecorano and convince her that plaintiff was disabled.  At each step of the litigation, there was a

considerable risk that Binder's effort would not succeed and that the firm would receive no

compensation for its work on this case.

      To be sure, the $36,146.75 fee requested by Binder amounts to $1,092.05 for each of the

33.1 hours Binder's attorneys spent on this case.  However, "even a relatively high hourly rate

may be perfectly reasonable, and not a windfall, in the context of any given case."  *See Fields*, 24

F.4th at 854.  In this case, the defendant's focus on the reasonableness of that hourly rate ignores

two important features of the Retainer Agreement.  First, because it was a contingent-fee

agreement and, as noted above, there was a very real possibility that Binder would receive no fees whatsoever.  Second, the agreement provided that the combined fees under §§ 406(a) and 406(b) would not exceed 25% of past-due benefits.  In keeping with this agreement, Binder has not sought fees for representing plaintiff at the agency level.  Accordingly, the $36,146.75 fee covers not only the hours spent on this case but also the hours spent litigating before the SSA.  Moreover, the fact that plaintiff negotiated this fee arrangement and does not oppose Binder's fee application is evidence that plaintiff, who will pay the fees from his past-due benefits, considers the fee requested to be reasonable.

## CONCLUSION

For the reasons set forth above, the Court grants Binder's motion for $36,146.75 in attorney's fees pursuant to 42 U.S.C. § 406(b).  The Commissioner shall pay this amount directly to Binder.  Since Binder has already received $6,759.02 in attorney's fees pursuant to the EAJA, Binder shall pay that amount to plaintiff upon receipt of the $36,146.75 from SSA.  *See Gisbrecht*, 535 U.S. at 796 (an attorney who receives fee awards under both the EAJA and § 406(b) for the same work must refund to the claimant the amount of the smaller fee.)

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2023

/s/ *Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge

11